Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| ASTRID MANUEL MOLINA IGLESIAS<br><br>Recurrido<br><br>v.<br><br>BELKIS MARIELA NAVAS MAGAZ<br><br>Peticionaria | TA2025CE00552 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso núm.: BY2019CV01004 |
|---|---|---|

Panel integrado por su presidente el juez Hernández Sánchez, el juez Rivera Torres y el juez Marrero Guerrero.

**Rivera Torres, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico, a 1 de diciembre de 2025.

Comparece ante este tribunal apelativo, la Sra. Belkis Mariela Navas Magaz (señora Navas Magaz o peticionaria), mediante el recurso de *certiorari* de epígrafe solicitándonos que revoquemos la determinación incluida en la *Minuta* de la vista celebrada el 9 de julio de 2025, notificada el 22 de septiembre siguiente, por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI). Mediante este dictamen, el foro primario ordenó a las partes a enmendar limitadamente el *Informe preliminar entre abogados y abogadas* presentado previamente para detallar solamente la prueba documental, y las estipulaciones sin incluir en el documento las teorías o cuestiones de hechos y de derecho que surjan de la evidencia nueva añadida al mismo.

Por los fundamentos que expondremos a continuación, expedimos el auto de *certiorari* solicitado y revocamos la determinación recurrida.

**I.**

Esta es la segunda vez que la señora Navas Magaz acude ante esta *Curia* para impugnar la determinación esbozada por el TPI en

la *Minuta* notificada el 22 de septiembre de 2025. En el primer recurso de *certiorari,* el 15 de septiembre emitimos una *Resolución* desestimando el auto solicitado por carecer de jurisdicción al no estar firmada la *Minuta* recurrida por la Magistrada (TA2025CE00388). Por lo que, el TPI notificó adecuadamente la determinación el 22 de septiembre de 2025, lo que nos permite ahora atender las controversias que nos plantea la peticionaria.

Para un mejor entendimiento del trámite procesal, nos remitimos al esbozado en el caso TA2025CE00388 del cual a continuación detallamos la parte aquí pertinente.

El 27 de febrero 2019, el Sr. Astrid Molina Iglesias (señor Molina Iglesias o recurrido) instó una demanda en contra de la señora Navas Magaz sobre liquidación de bienes gananciales. El 19 de junio de 2019 la peticionaria instó la correspondiente contestación.

Luego de varios incidentes procesales, innecesarios pormenorizar, el **2 de febrero de 2024**, las partes presentaron un escrito intitulado ***Informe sobre Conferencia con Antelación a Juicio*.**[1] En el documento, entre otros asuntos, se detalló la prueba documental y testifical que cada parte interesa presentar y aquella que se pretendía impugnar. Además, expresaron que no habían logrado llegar a un acuerdo final.

El 6 de febrero siguiente, el TPI celebró la *Conferencia Con Antelación al Juicio y Vista Transaccional* a la que comparecieron las partes y sus representaciones legales. De la Minuta surge que el TPI expresó que daba la oportunidad para que los abogados se reúnan e identifiquen la prueba y preparen una carpeta de evidencia. Además, el foro revisado calendarizó diferentes reuniones entre los

---

[1] Véase, el Sistema Unificado de Manejo y Administración de Casos del TPI (SUMAC TPI), Entrada núm. 120. Advertimos que, aun cuando las partes y el TPI han identificado el documento con este nombre, la Reglas 37.4 de las de Procedimiento Civil, *infra,* especifica que el mismo se titula *Informe preliminar entre abogados y abogadas.*

abogados; así como una nueva **Conferencia Con Antelación al Juicio y Vista Transaccional** para el 5 de junio de 2024.

El 10 de mayo de 2024, el recurrido presentó una moción en cumplimiento de lo ordenado por el TPI en la vista celebrada el 6 de febrero. En el escrito se anejaron los inventarios de los activos, pasivos y créditos reclamados por cada parte, pero se hizo la salvedad de que "por tratarse, en el caso de los créditos reclamados, de pagos que se realizan mensualmente, se aclara que dicha información continuará cambiando mes a mes, hasta tanto se adjudique propiamente el asunto ante la consideración del tribunal."[2] El 14 de mayo, el foro recurrido tomó conocimiento y ordenó que se unieran al expediente judicial.

El 4 de junio de 2024, las partes presentaron ante el TPI un **nuevo Informe sobre Conferencia con Antelación al Juicio**.[3] Al día siguiente, el foro *a quo* llevó a cabo la *Conferencia con Antelación a Juicio y Vista Transaccional,* a la cual asistieron las partes y sus representaciones legales. De la Minuta[4] surge que la Magistrada expresó que el informe fue presentado el día anterior. Asimismo, en esta se indica que, aun cuando se establece que el descubrimiento de prueba culminó el 19 de octubre de 2022, **los abogados planteparon que todavía faltaban documentos por entregar**. Al respecto, se concedió término a los abogados para atender los asuntos expuestos sobre los documentos que alegadamente no fueron entregados. El TPI señaló para el 17 de octubre de 2024 a las 11:00 a.m., por videoconferencia, una vista para discusión del *Informe de Conferencia con Antelación a Juicio.*

El 14 de junio de 2024, la señora Navas Magaz presentó una moción en la que aclaró que, una vez analizada la prueba entregada

---

[2] SUMAC TPI, Entrada núm. 130.
[3] SUMAC TPI, Entrada núm. 132.
[4] SUMAC TPI, Entrada núm. 134.

por el recurrido, esta estaba incompleta o faltaban documentos como contratos de alquiler a corto plazo (AIRBNB).[5] Mediante la Resolución del 24 de julio de 2024, el TPI declaró estos planteamientos tardíos.

El 17 de octubre de 2024, el TPI celebró la **Conferencia con Antelación al Juicio** a la que comparecieron los representantes de las partes y de la Minuta surge, a nuestro entender, que se discutió el **Informe sobre Conferencia con Antelación al Juicio (SUMAC TPI, Entrada núm. 120)**.[6] Debido a que del mismo no surge el inventario de bienes, el TPI ordenó que "Deberán hacer el inventario de bienes activos y pasivos en forma de tabla donde se establezca la cuantía reclamada, el concepto de la cuantía y de haber controversia u objeción hacer una leyenda indicando el [por qué] de esa objeción." Además, el foro recurrido pautó la **Conferencia con Antelación al Juicio** para el 13 de febrero de 2025.

El 12 de diciembre de 2024, las partes instaron una *Moción Sometiendo Inventario Conjunto en Cumplimiento de Orden Judicial* en la que anejaron el documento mediante una tabla detallando los activos, pasivos, créditos, así como las objeciones.[7] Mediante una Orden notificada el 13 de diciembre, el foro de primera instancia dio por cumplida la misma y determinó que se uniera el inventario al expediente.

El 13 de febrero de 2025, se llevó a cabo la **Conferencia con Antelación al Juicio** según pautada. Surge de la Minuta que se discutió el antedicho inventario conjunto y resulta importante advertir que se discutió el **Informe de Conferencia con Antelación a Juicio** del 4 de junio de 2024. Allí, se indicó que el tribunal expresó que "… la prueba que no sea anunciada en el informe de

---

[5] SUMAC TPI, Entrada núm. 137.
[6] SUMAC TPI, Entrada núm. 149.
[7] SUMAC TPI, Entrada núm. 159.

conferencia con antelación a juicio no será permitida en el juicio. Señala que independientemente se haya hecho requerimiento de prueba o no, el informe de conferencia con antelación a juicio tiene que incluir toda la prueba a presentarse en el juicio."[8]

Ese mismo día, el TPI emitió una *Orden: "Ruling Del Tribunal" Sobre Informe de Conferencia con Antela...* mediante la que, acorde con los asuntos atendidos en la vista, otorgó a la peticionaria hasta el 24 de febrero siguiente para presentar, mediante moción, el detalle específico de toda la prueba documental que pretende utilizar en el juicio, la cual no fue incluida en el ***Informe de Conferencia con Antelación a Juicio***.[9] Asimismo, concedió al señor Molina Iglesias hasta el 6 de marzo de 2025, para presentar su posición u objeciones sobre la prueba anunciada por la señora Navas Magaz. De igual forma, le ordenó a este que, el 24 de febrero, presente el ***Informe de Conferencia con Antelación a Juicio* enmendado**. Más le instruyó que solamente se le autorizaba a enmendar la página núm. 10 del informe, a los fines de detallar la prueba anunciada en los acápites 1, 2, 3, 4 y 5.

Al analizar estas instrucciones, es importante destacar que no cabe duda de que el TPI ordenó que se enmendara el ***Informe de Conferencia con Antelación a Juicio* presentado el 4 de junio de 2024 y no el primero, ya que en la página núm 10 de este no se desglosa prueba documental a base de dichos acápites**.

El foro primario también expresó que, conforme con la fecha acordada con las partes en la vista celebrada el 13 de febrero de 2025, la continuación de la ***Conferencia con Antelación a Juicio*** será el 9 de abril de 2025, en forma presencial.

El 24 de febrero de 2025, la peticionaria, en cumplimiento con lo ordenado por el TPI, instó una moción donde incluyó la

---

[8] SUMAC TPI, Entrada núm. 170. La Minuta se notificó el 11 de marzo de 2025.
[9] SUMAC TPI, Entrada núm. 161.

prueba no incluida en el ***Informe de Conferencia con Antelación a Juicio***.[10]

El 28 de febrero posterior, el recurrido incoó una *Moción en Cumplimiento de Orden[11]* en la que especificó que: "Con la presente moción se incluye **el Informe de Conferencia con Antelación a Juicio enmendado para incluir la prueba detallada a que hacía referencia el informe que se presentó en junio de 2024** y que incluía, como quedó dicho entonces, los estados de ingresos y gastos realizados por el demandante, desde la fecha de efectividad del divorcio hasta la fecha de febrero de 2024, fecha que habría de variar con el decursar del tiempo." El 7 de marzo el foro recurrido emitió Orden en la que tomó conocimiento de dicho escrito.[12]

El 13 de marzo de 2025, el señor Molina Iglesias presentó otra moción en la que aclaró que "Con el presente escrito se incluye el **Informe de Conferencia con Antelación a Juicio enmendado para incluir la prueba detallada a que hacía referencia el informe que se presentó en junio de 2024** y que incluía, como quedó dicho entonces, los estados de ingresos y gastos realizados por el demandante, desde la fecha de efectividad del divorcio hasta el presente, esto es, marzo de 2025."[13]

El 20 de marzo de 2025, el foro recurrido, atendiendo una moción previa del señor Molina Iglesias, en la que este advirtió de ciertos nuevos documentos que la peticionaria pretendía utilizar en el juicio, dictaminó que se le concedía hasta el 28 de marzo para aclarar, objetar o informar si la prueba anunciada (parcial o total) por la señora Navas Magaz fue parte del descubrimiento de prueba y en la alternativa, si existiera evidencia que no hubiese sido parte del descubrimiento de prueba deberá detallar la misma.[14]

---

[10] SUMAC TPI, Entrada núm. 163.
[11] SUMAC TPI, Entrada núm. 166. Énfasis nuestro.
[12] SUMAC TPI, Entrada núm. 167.
[13] SUMAC TPI, Entrada núm. 168. Énfasis nuestro.
[14] SUMAC TPI, Entradas núms. 172 y 174.

El 9 de abril de 2025, el foro *a quo* celebró la **Conferencia sobre el Estado de los Procedimientos** en la que se discutió, entre otros asuntos, la alegación de la abogada de la peticionaria respecto a cierta prueba documental que estaba en poder del señor Molina Iglesias.[15] De la Minuta surge que el abogado del recurrido expresó que le entregará a la peticionaria los documentos para lo que el tribunal le concedió el plazo de quince (15) días. El TPI ordenó a los representantes legales a reunirse para estipular la prueba el 30 de mayo y presentar el **Informe de Conferencia con Antelación a Juicio Enmendado** el 1 de julio de 2025, más pautó la *Vista para la Discusión del Informe de Conferencia con Antelación a Juicio* para el 20 de agosto de 2025. Respecto al informe indicó que "Lo único que va a restar de añadirle a ese informe son las estipulaciones que se discutirán ese día."

El 6 de mayo de 2025, la señora Navas Magaz instó una moción en la que informó al TPI que se entregó la carpeta de la prueba documental, con su correspondiente índice, personalmente en la oficina del representante legal del recurrido.[16] El foro primario tomó conocimiento de ello.

El 22 de mayo siguiente, la peticionaria instó ante el foro de instancia una *Moción para que el Tribunal Fije Posición sobre Carpeta del Demandante* en la que advirtió que "8. Cuando revisé las carpetas en el día de hoy, estas contienen Trescientos Cincuenta y Dos (352) documentos que suman setecientas cincuenta y dos (752) páginas. 9. La situación es que yo preparé la carpeta con los documentos que le informé al tribunal que son diecinueve (19) y el demandante añadió doscientos cuatro (204) documentos que no

---

[15] SUMAC TPI, Entrada núm. 181.
[16] SUMAC TPI, Entrada núm. 184.

informó cuando el Tribunal ordenó que se detallaran."[17] Por lo que, le solicitó al tribunal ordene si los va a aceptar o no son admisibles.

El 30 de mayo, el foro primario emitió una *Orden Urgente*[18] en la que, en respuesta a la anterior moción, dictaminó que:

> 1. Las partes se tienen que reunir de buena fe a los fines de estipular toda la prueba que sea susceptible de estipulación. La reunión se tiene que volver a coordinar y los trabajos de la reunión se tienen que atender antes del 30 de junio de 2025. **Se les apercibe que, desde que cada parte present[ó] el detalle de su prueba, cada representación legal es responsable de evaluar y estudiar la misma. Este tribunal no aceptar[á] más excusas que lo único que han provocado es que este caso no se haya podido atender en los méritos.
>
> 2. Cualquier objeción (levantada por cualquiera de las partes) a la prueba incluida en el Informe de Conferencia con Antelación a Juicio la atenderemos en día en que este tribunal finalmente pueda discutir el Informe de Conferencia.
> …

Ante el hecho de que la señora Navas Magaz contrató una nueva representación legal, quien mediante moción del 9 de junio, solicitó más tiempo para revisar el expediente y preparar un nuevo ***Informe de Conferencia con Antelación a Juicio***, al día siguiente, el foro revisado emitió *Orden: Calendarización Urgente - Vista sobre el Estado d.…*[19] Mediante esta, aceptó la nueva representación legal y a su vez, aclaró al Lcdo. Luis A. Meléndez-Albizu que "… NO es correcto que este tribunal ordenó que se presentara un nuevo Informe de Conferencia con Antelación a Juicio." Más, le concedió el término perentorio de quince (15) días para revisar el expediente y reunirse con el abogado del recurrido. Asimismo, calendarizó breve *Vista Urgente* sobre el estado de los procedimientos, mediante videoconferencia, para el 9 de julio de 2025.

Trascurridos otros trámites, innecesarios pormenorizar, el 9 de julio de 2025 se celebró la *Vista Urgente,* mediante videoconferencia, a la que asistieron los abogados de ambas partes

---

[17] SUMAC TPI, Entrada núm. 186.
[18] SUMAC TPI, Entrada núm. 189.
[19] SUMAC TPI, Entradas núms. 193 y 195.

y el recurrido.  Precisa especificar que en la *Minuta*[20] objetada el foro

primario, en lo concerniente, determinó lo siguiente:

>        …
>
> > **Las partes tienen hasta el 1 de agosto de 2025 para someter el "Informe de Conferencia con Antelación a Juicio".**
> > **El Tribunal deja establecido [que] el Informe de Conferencia con Antelación a Juicio es el que se presentó hace unos años atrás, es el primero que aparece en el récord del Tribunal.** Este Informe de Conferencia con Antelación a Juicio las teorías no se pueden modificar, las enmiendas a las alegaciones tampoco. Las alegaciones de las partes son las que surgen en la demanda y de la contestación a la demanda. No hay reconvención. **El Tribunal no autoriza que se enmienden las alegaciones**.
> >
> > **…**
> >
> > **El Tribunal aclara que se supone que los representantes legales hubieran trabajado en el pt original a los únicos efectos de detallar la prueba documental para identificarlo conforme a las instrucciones del Tribunal y llegar a estipulaciones. Reitera que no quiere que trabajen en el Informe de Conferencia con Antelación a Juicio que se presentó el año pasado. Quiere que trabajen en el Informe de Conferencia con Antelación que se presentó <u>antes que los abogados presentes asumieran la representación legal, que fue el informe que el Tribunal acogió</u>. Lo único que el Tribunal ordenó fue que se enmendara el renglón de la prueba para que se desglosara.  No se van a enmendar las alegaciones dos años después que el Tribunal emitió el "rulling". Reitera quiere que trabajen en el Informe de Conferencia que se presentó, es el que se supone hace dos años se hubiera enmendado a los únicos fines de detallar la prueba documental e incluir estipulaciones.**
> > **…**
> >
> > **…Lo único que van a enmendar es la prueba documental y detallar las estipulaciones. Adicional a eso, se acogió la recomendación del licenciado Meléndez de hacer una tabla que resuma las partidas. Fuera de ello nada adicional. Se extendió hasta el 1 de agosto.**

En atención a la instrucción del TPI, de confeccionar el

*Informe de Conferencia con Antelación a Juicio* antes del 11 de

agosto, ese mismo día, la peticionaria presentó una moción

manifestando que no ha recibido información del señor Molina

---

[20] SUMAC TPI, Entrada núm. 213.  Reiteramos que esta determinación fue objeto de revisión ante nos y determinamos desestimar el recurso por no estar firmada la *Minuta* por la Magistrada. Señalamos, además, que la peticionaria presentó reconsideración ante el TPI la cual fue denegada; sin embargo, como advertimos en nuestra *Resolución* ello resultó inoficioso.

Iglesias referente "a. Su oferta de estipulaciones de hechos para tratar de dispensar lo más posible de prueba documental suya. b. Su tabla con su lista de identificaciones que incluya una columna con las objeciones. c. Sus objeciones a las 19 identificaciones de la demandada. 4. En adición, aún no hemos finiquitado la negociación de la prueba documental a ser estipulada por ambas partes."[21] Por ello, solicitó una breve prórroga.

El TPI concedió la prórroga y expresó que "... la misma está condicionada a que las partes discutan el informe y las estipulaciones incluidas en el mismo, bajo apercibimiento de sanciones. El informe que se presente tiene que haber sido discutido por las representaciones legales. Se les concede prórroga final hasta las 9:00 am del lunes 18 de agosto de 2025."[22]

Por su parte, el 22 de septiembre de 2025, el foro *a quo* emitió una *Orden* en la que decretó que "[a] los fines de atender la Resolución dictada el 15 de septiembre de 2025 por el Tribunal de Apelaciones nos servimos en suscribir la Minuta correspondiente a la vista celebrada el 9 de julio de 2025 (Entrada #213). Véase Anejo."[23]

Inconforme con lo determinado en la *Minuta*, la peticionaria acudió ante este tribunal intermedio imputándole al tribunal primario haber incurrido en el siguiente error:

> ERRÓ EL TPI COMO CUESTIÓN DE DERECHO Y ABUSÓ DE SU DISCRECIÓN, AL LIMITAR LOS ARGUMENTOS DE HECHOS Y DE DERECHO QUE LA DEMANDADA PUEDE PRESENTAR EN EL NUEVO INFORME DE CONFERENCIA CON ANTELACIÓN AL JUICIO Y AL EXCLUIR TODOS LOS ARGUMENTOS DE HECHOS Y DE DERECHO PRESENTADOS EN EL INFORME RADICADO EL 4 DE JUNIO DE 2024 Y LOS ARGUMENTOS DE HECHOS Y DE DERECHO QUE SE DERIVAN DE LA EXTENSA PRUEBA INFORMADA POR EL DEMANDANTE POR PRIMERA VEZ EL 6 DE MAYO DE 2025, LO QUE CONSTITUYE UNA RENUNCIA FORZADA IMPUESTA POR EL TPI EN VIOLACIÓN AL DEBIDO PROCESO DE LEY.

---

[21] SUMAC TPI, Entrada núm. 218.
[22] SUMAC TPI, Entrada núm. 219 notificada el 11 de agosto; y Entradas núms. 220 y 221 el 18 posterior.
[23] SUMAC TPI, Entrada núm. 242.

El 7 de octubre de 2025, emitimos una *Resolución* concediéndole a la parte recurrida el término de diez (10) días para expresarse. El 20 de octubre siguiente, la parte recurrida cumplió con lo ordenado, por lo que nos damos por cumplidos y; a su vez, decretamos perfeccionado el recurso.

Analizados los escritos de las partes y el expediente apelativo; así como estudiado el derecho aplicable, procedemos a resolver.

**II.**

**Auto de *Certiorari***

El recurso de *certiorari* es el vehículo procesal discrecional disponible para que un tribunal apelativo revise las resoluciones y órdenes interlocutorias de un tribunal de inferior jerarquía. Regla 52.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1; *García v. Padró*, 165 DPR 324, 334 (2005). Todo recurso de *certiorari* presentado ante este foro apelativo deberá ser examinado primeramente al palio de la Regla 52.1 de las de Procedimiento Civil, *supra*. Dicha regla limita la autoridad y el alcance de la facultad revisora de este foro apelativo sobre órdenes y resoluciones dictadas por el foro de primera instancia, revisables mediante el recurso de *certiorari*. La referida norma dispone como sigue:

> Todo procedimiento de apelación, certiorari, certificación, y cualquier otro procedimiento para revisar sentencias y resoluciones se tramitará de acuerdo con la ley aplicable, estas reglas y las reglas que adopte el Tribunal Supremo de Puerto Rico.
> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, **solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo.** No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando **se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.** Al denegar la expedición de un recurso de certiorari en

> estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 de este apéndice sobre los errores no perjudiciales. Regla 52.1 de Procedimiento Civil, supra. [Énfasis Nuestro].

Por tanto, el asunto que se nos plantea en el recurso de *certiorari* deberá tener cabida bajo alguna de las materias reconocidas en la Regla 52.1 de las de Procedimiento Civil, *supra*. Ello, debido a que el mandato de la mencionada regla dispone expresamente que solamente será expedido el auto de *certiorari* para la revisión de remedios provisionales, interdictos, denegatoria de una moción de carácter dispositivo, admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia y en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.

Así, pues, para determinar si debemos expedir un auto de *certiorari* debemos determinar primeramente si el asunto que se trae ante nuestra consideración versa sobre alguna de las materias especificadas en la Regla 52.1 de las de Procedimiento Civil, *supra*. Sin embargo, aun cuando el asunto esté contemplado por dicha regla, para determinar si procede la expedición de un recurso y poder ejercer sabiamente nuestra facultad discrecional, debemos acudir a lo dispuesto en la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 62-63, 215 DPR __ (2025), que dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Estos criterios sirven de guía para poder determinar, de manera sabia y prudente, si procede o no intervenir en el caso en la etapa del procedimiento en que se encuentra el caso. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008). Es decir, que el examen que emplea el foro apelativo no se da en el vacío ni en ausencia de otros parámetros. *800 Ponce de León v. AIG*, 205 DPR 163, 176 (2020).

De otra parte, el ejercicio de las facultades del Tribunal de Primera Instancia merece nuestra deferencia, por tanto, solo intervendremos con el ejercicio de dicha discreción en aquellas instancias que se demuestre que el foro recurrido: (1) actuó con prejuicio o parcialidad; (2) incurrió en un craso abuso de discreción; o (3) se equivocó en la interpretación de cualquier norma procesal o de derecho sustantivo. *BBPR v. SLG Gómez-López*, 213 DPR 314, 334-335 (2023); *Ramos v. Wal-Mart*, 165 DPR 510, 523 (2006); *Rivera Durán v. Banco Popular de Puerto Rico*, 152 DPR 140,155 (2000).

**La Regla 37.4 de las de Procedimiento Civil**

La Regla 37.4 de las de Procedimiento Civil, 32 LPRA Ap. V R. 37.4, exige que los abogados o las abogadas de las partes en los casos señalados para conferencia con antelación al juicio se reúnan, por lo menos quince (15) días antes de la vista, para preparar el

*Informe preliminar entre abogados y abogadas.* Al respecto, la norma mandata que el informe incluya lo siguiente:

(a) Nombres, direcciones, teléfonos, fax y correo electrónico de los abogados y las abogadas que intervendrán en representación de las partes en la vista en su fondo del caso.

(b) Una breve relación de los hechos pertinentes a las reclamaciones o defensas de las partes. Si se reclaman daños, un desglose detallado de éstos.

(c) **Estipulaciones sobre los hechos, documentos y asuntos sobre los cuales no exista controversia y que eviten la presentación de evidencia innecesaria**.

(d) **Una exposición breve de la posición de las partes con respecto a los hechos, documentos y asuntos sobre los cuales exista controversia y la base legal que apoye tal posición.**

(e) Un resumen del derecho aplicable a los hechos específicos del caso, un resumen de las cuestiones de derecho que las partes anticipen que se plantearán o que ya se hayan planteado, señalando aquellos en que exista desacuerdo y sus opiniones, y la jurisprudencia específica aplicable.

(f) **Una relación detallada de la prueba documental debidamente identificada, incluso las deposiciones u otra prueba que se ofrecerá y respecto a cuya admisión en evidencia no exista controversia.**

(g) **Una relación de la prueba documental que ofrecerá cada parte y respecto a cuya admisión en evidencia exista controversia, incluso una sucinta exposición de los fundamentos en que se base la objeción.**

(h) Una lista de cada parte con los nombres y las direcciones de las personas testigos, incluso los peritos y las peritas de ocurrencia, que testificarán en el juicio (excepto los testigos de impugnación o de refutación), incluso un resumen de su testimonio.

(i) Una lista de cada parte con los nombres de las personas peritos que testificarán en el juicio, incluyendo un resumen de su testimonio.

(j) **Las reclamaciones o defensas que cada parte alegue que se han desistido o renunciado.**

(k) Una lista de todas las mociones presentadas y aquellas que consideren someter, sujeto a la discreción del tribunal, para permitirlas en esta etapa del procedimiento.

(l) **Las enmiendas a las alegaciones y los fundamentos por los cuales éstas no se presentaron con anterioridad.**

(m) Un estimado del número de días y horas requeridas para la presentación de la prueba de cada una de las partes en el juicio en su fondo.

(n) La posibilidad de una transacción.

(o) Considerar cualesquiera otras medidas que puedan facilitar la más pronta terminación del pleito. (Énfasis nuestro)

La Regla 37.4, antes citada, permite que estos asuntos sean discutidos entre los abogados por teléfono, teleconferencia y otros métodos. A su vez, preceptúa que el informe deberá someterse diez (10) días antes del señalamiento para la conferencia con antelación al juicio. Asimismo, **decreta que, a menos que se demuestre justa causa, no se permitirá presentar prueba que no haya sido previamente identificado en el informe a prepararse**.

### III.

La peticionaria, en esencia, expuso que el TPI erró al limitar los argumentos de hechos y de derecho que puede presentar en el nuevo *Informe de Conferencia con Antelación al Juicio.* Asimismo, mencionó que se incidió al excluir todos los argumentos de hechos y de derecho presentados en el Informe radicado el 4 de junio de 2024, así como los argumentos de hechos y de derecho que se derivan de la extensa prueba informada el señor Molina Iglesias, por primera vez el 6 de mayo de 2025, lo que constituye una renuncia forzada impuesta por el foro primario en violación al debido de ley.

De entrada, advertimos que la controversia planteada está incluida en las instancias que esta *Curia* puede atender, al palio de la Regla 52.1, **por ser una situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia**. Asimismo, están presentes criterios de nuestra Regla 40, *supra,* por lo que determinamos expedir el recurso solicitado, en especial, por ser el momento más propicio para atenderlo.

Aunque reconocemos que los tribunales de instancia gozan de amplia discreción para pautar y conducir la tramitación de los procedimientos ante su consideración, no podemos avalar el proceder conforme a las particulares de este caso. Es decir,

reafirmamos la norma apelativa respecto a que esta *Curia* no interfiere con los asuntos de manejo del caso por parte del TPI, salvo que surjan indicios claros de abuso de discreción o arbitrariedad.

De la *Minuta* impugnada surge que el foro primario decretó que solamente se enmendaría limitadamente el primer ***Informe sobre Conferencia con Antelación a Juicio* (SUMAC, TPI, Entrada núm. 120)** presentado por las partes el 2 de febrero de 2024, a los únicos fines de detallar la prueba documental e incluir estipulaciones. Por lo que, no se revisarían las alegaciones ni se podrían modificar las teorías.

Conforme surge del derecho esbozado previamente, mandata la Reglas 37.4 de las de Procedimiento Civil, *supra*, en el *Informe preliminar entre abogados y abogadas* se incluirá, entre otra, la siguiente información:

- **Estipulaciones sobre los hechos, documentos y asuntos sobre los cuales no exista controversia y que eviten la presentación de evidencia innecesaria**.
- **Una exposición breve de la posición de las partes con respecto a los hechos, documentos y asuntos sobre los cuales exista controversia y la base legal que apoye tal posición.**
- **Una relación detallada de la prueba documental debidamente identificada, incluso las deposiciones u otra prueba que se ofrecerá y respecto a cuya admisión en evidencia no exista controversia.**
- **Una relación de la prueba documental que ofrecerá cada parte y respecto a cuya admisión en evidencia exista controversia, incluso una sucinta exposición de los fundamentos en que se base la objeción.**
- **Las reclamaciones o defensas que cada parte alegue que se han desistido o renunciado.**
- **Las enmiendas a las alegaciones y los fundamentos por los cuales éstas no se presentaron con anterioridad.**

Por tanto, no cabe duda de que limitar objeciones, defensas o teorías que surjan de una **prueba nueva** resulta ser improcedente conforme establece la referida Regla 37.4, *supra*. Más aún, no podemos obviar que la propia norma preceptúa que, en este informe,

se pueden incluir las enmiendas a las alegaciones y los fundamentos por los cuales éstas no se presentaron con anterioridad. Es decir, estamos ante una etapa de los procedimientos en las que el tribunal debe permitirles a las partes la oportunidad de dirimir todos los asuntos pendientes de discusión, previo a la *Conferencia con Antelación al Juicio,* en especial, todo aquello relacionado con el descubrimiento de prueba faltante. Como explica el tratadista Cuevas Segarra "[e]l enfoque de lo que debe contener el Informe debe ser uno práctico y facilitador para el juzgador estar en condiciones de adjudicar la controversia en el juicio con la menor distracción de planteamientos previos o técnicos que debieron o deben ser atendidos previos al juicio." J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 2da ed., San Juan, Pubs. JTS, 2011, T. IV, pág. 1112.

Agregamos que la regla decreta que, a menos que se demuestre justa causa, no se permitirá presentar prueba que no haya sido previamente identificada en el informe. De igual forma, se indica que se tendrán por renunciadas aquellas objeciones y defensas que no se hayan especificado en el Informe. Por ello, restringir a cualquier parte a formular teorías, objeciones o defensas de prueba nueva, que no fuera notificada con anterioridad, impide una litigación efectiva.

Por su parte, precisa enfatizar que, aun cuando el TPI ha expresado que el descubrimiento de prueba culminó en octubre de 2022, del trámite procesal detallado surge diáfanamente que en las distintas vistas celebradas para discutir el Informe, las partes manifestaban que no se habían entregado documentos o que todavía existían dudas o controversias sobre las reclamaciones. Ejemplo de ello es el inventario de bienes, el cual no estaba en el documento, lo que provocó que el foro primario, **en octubre de 2024**, ordenara que las partes confeccionaran "... el inventario de bienes activos y pasivos en forma de tabla donde se establezca, la cuantía reclamada,

el concepto de la cuantía y de haber controversia u objeción hacer una leyenda indicando el porqué de esa objeción."

Asimismo, todavía en marzo de 2025, las partes presentaron objeciones sobre prueba nueva que se pretendía incluir en el *Informe preliminar entre abogados y abogadas* incluyendo la que motiva este recurso.

Por último, como es sabido el TPI tiene discreción para alterar los términos del manejo del caso. Esto, porque, aunque el *Informe preliminar entre abogados y abogadas* rige los procedimientos subsiguientes en todo caso civil, el mismo no es una camisa de fuerza que elimine la discreción del TPI para alterarlo, si así se evita una injusticia. *Berríos Falcón v. Torres Merced*, 175 DPR 962, 984 (2009)[24].

En fin, el foro primario incurrió en los errores señalados por la peticionaria.

**IV.**

Por los fundamentos antes expuestos, expedimos el auto de *certiorari* solicitado y revocamos la determinación recurrida.

Notifíquese inmediatamente.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


> LCDA. LILIA M. OQUENDO SOLÍS
> Secretaria del Tribunal de Apelaciones

---

[24] Opinión Concurrente del Hon. Juez Federico Hernández Denton.